is 242565 also Disability Rights New York v. New York State Department of Corrections and Community Supervision. Good morning, Your Honors. May it please the Court, we are still in the morning, so that's good. My name is Christina Asme. I represent the appellant Disability Rights New York. We are challenging New York State Department of Corrections and Community Supervision, which we're again calling DOCS. We're appealing a decision by the district court that denied us full prevailing party status in the second DRNY v. DOCS case. So this is one of three lawsuits, the first DRNY1 we just argued, and now we are focusing on DRNY2 in this argument. Again, this case challenges, the underlying case challenges DOCS withholding of records that DRNY requested. I will not go through the reasoning why we need these records again because I did that in the last argument. In this case, again, like the last case, DRNY received the very relief that we were seeking in the lawsuit. We received the copies of records that we requested. Nonetheless, the district court abused its discretion when it applied an incorrect legal standard to determine that DRNY did not have the prevailing party status for the entirety of the case. Additionally, in this case, the district court abused its discretion and committed a reversible error when it concluded that DRNY's fees and hourly rates were excessive. In this case, we filed a mandatory preliminary injunction, and to get straight to the point, DRNY is the prevailing party under the Lackey v. Stinney's Brightline rule. In that rule, the court must consider whether a party achieved the enduring judicial relief beyond a transient victory and that it was judicially sanctioned. In other words, the court, the district court must consider whether the court conclusively resolved a claim by granting the relief on the merits. And in this case, the judicially sanctioned enduring judicial relief did come from the preliminary injunction. That is our position, because the court concluded, as a matter of law and fact, that we are entitled to the records that we requested under B. But that doesn't mean that there was a clear likelihood of success on the merits. But that doesn't mean that that wasn't a summary judgment grant. It gave you preliminary relief. Some might understand Lackey v. Stinney to say that's not enough, but now I don't understand them to be challenging the award insofar as the district court gave it as to your success with respect to B, not A. But you want fees for the part of the preliminary injunction you didn't secure, right? It's our position that we were the prevailing party because we received on A and B because we. Well, B, nobody's challenging your getting fees on that. But only a very point in. Lackey v. Stinney wouldn't support it, but it's not if there hasn't been a cross appeal on that. We. It's our position that the preliminary injunction, this was a mandatory preliminary injunction. That's a fundamental distinction between Lackey. In the Lackey case, drivers lost their driver's license because of a state law that removed a person's right to have a driver's license when they had unpaid court fees. And the drivers in that case challenged that law as unconstitutional because it violated a due process clause. And so what the court did in that case was it issued just a standard P.I. order to say that we're going to temporarily halt that state law. And that's what the court did. And then right after that order came from the district court, a non-party, the legislature, basically they repealed that law and the case became moot. And that was truly a transient victory by the drivers because the relief from the P.I. in no way was permanent. It was subject to future litigation in the case. But this case is different because what we have here is a mandatory preliminary injunction. Within that order, the judge providing. I realize that the Supreme Court itself characterized what it was holding as a bright-line rule, not a qualified rule. And what it said was because preliminary injunctions do not conclusively resolve the rights of the parties on the merits, they do not confer prevailing party status. A plaintiff who secures a preliminary injunction has achieved only temporary success at an intermediary stage of the suit. Now, that's what it had to say about preliminary injunction. And, again, I'll go back that the State has not challenged your getting awarded fees on the preliminary injunction you secured. Why don't you stay focused on how not having got a preliminary injunction with respect to A, you still think you're a prevailing party as to A? Because that's the only thing really at issue here. Well, okay. With some caveats, but I won't get into them now because I don't think they're applicable to your point. But in the preliminary injunction, as it relates to both A and B — well, I'm sorry, as it relates to both — to A, the Court definitively said that the delay of the production of A's documents, that it — that there was a delay and, therefore, it denied or it violated. Even there, there was a likelihood of success on the merits, but it was denied because you failed to show irreparable harm. So you didn't get the relief you were seeking. Right. And so I'm still trying to figure out how you're a prevailing party with respect to your claim as to A. Because in that preliminary injunction order, the Court made factual conclusions that were on the merits. And he also made legal conclusions as to B, that denial of acts — in particular with B, he said — the judge on page A56, Judge Sotheby's said that the denial of access, quote, defeats the purpose of the PME Act. And in light of what DOCS was doing of completely with preventing us to have access from B's records. Now, with regard to A, the Court in that mandatory preliminary injunction order identified that the delay — that the — as a factual conclusion, that DOCS delayed DRNY access to individual A's records, which you just — you just identified as well. The conclusion is that there was a clear likelihood you would succeed on the merits. That is not a final decision on the merits. It certainly is a strong signal that the Court thinks you're likely to succeed, but it's not a conclusive decision. It's still open to litigation, right? In — So under Lackey, that wouldn't — and in any event, you didn't get the relief because you couldn't satisfy the harm prong. Well, in Lackey, we're really focused on the enduring judicial relief that's judicially sanctioned. And that determination, as a matter of fact that the Court made, that DOCS delayed access, DRNY access to the records of A, that we — we actually appeal — I think what's important in that is that DOCS involuntarily turned those records over in an interlocutory appeal of — of a finite issue as to whether or not DRNY is irreparably harmed if we don't get — get access to unredacted copies of records. And that — and that this Court unequivocally said that the case is moot because DOCS gave us those records. And DOCS gave us those records in light of the factual determination on — that went to the merits of the underlying claim that we — They say they didn't comply with New York law. Well, the New York law didn't even exist at this time. All right. Well, we'll hear you. Appreciate it. Thank you. Attorney Brody. May it please the Court, Frederick Brody for DOCS. The district court appropriately exercised its wide discretion to determine the amount of attorneys' fees by reducing plaintiffs' claimed fees in three reasonable ways. First, the district court reasonably exercised discretion to cut off fees as of July 23, 2021. That was the date of the preliminary injunction. The P.I. as to Individual B was plaintiffs' only success in the litigation. The district court denied plaintiffs' summary judgment motion, granted DOCS' summary judgment motion, and entered judgment dismissing the complaint. Time spent after the P.I. was entered accounted for a substantial amount of the additional fees that plaintiff is claiming in this appeal. A large part of the fees requested come from plaintiffs' unsuccessful appeal to this district court. From the P.I. order, which plaintiff now claims it won, the district court reasonably declined to award fees for that time. In this Court, when asked at oral argument what relief plaintiff wanted, plaintiffs' counsel requested, quote, a clarification of the law, close quote. As this Court pointed out in its summary order, that would have been an unauthorized advisory opinion. This Court dismissed the appeal as moot. That was a loss for plaintiff. As the appellant, plaintiffs sought relief from this Court. The Court awarded no relief. Second, the district court reasonably reduced the fee to exclude work on the P.I. as to Individual A. Plaintiff's P.I. motion was denied as to Individual A, so plaintiffs did not prevail. And DOCS won summary judgment as to Individual A. So it was reasonable to divide the P.I. fees in half and attribute 50 percent to Individual A and disregard that 50 percent. The 50 percent that was attributed to Individual B, of course, we did not appeal from. I didn't anticipate Lackey. We followed the law of this Court. But even if, I mean, this is a curious situation. Lackey does create a right-line rule with regard to preliminary injunctive relief. But in the context of producing documents, if a preliminary injunction is entered and is complied with by DOCS, the documents are produced, and then the matter becomes moot. And it seems a little strange to deny prevailing party status to the party requesting production in that context. That question isn't really before us, I think, because you're not contesting the production of the fees with regard to Individual B. That is my answer, Your Honor. Individual B, we lost the P.I. We complied with it promptly. And we're not contesting that they're entitled to fees. But were this Court to award additional fees over and above what the district Court awarded post Lackey, if this Court were to award post Lackey additional fees, that would, at a minimum, be out of step with Lackey. And that's our argument on Lackey. The district court reasonably — I think I'm up to my third way in which the district court reasonably exercised its discretion. It reasonably exercised discretion to reduce plaintiffs' billing rates. The Court chose to compensate plaintiffs' counsel at the rates applicable when they filed and briefed the P.I. motion. The decision to enhance or reduce rates is entrusted to the district court's discretion. Although the Supreme Court has approved enhancement as a device to compensate for delay, enhancement is not mandatory. Compensation for delay would be inappropriate here under this Court's precedent because plaintiff caused the delay. Among other things, the district court suggested a procedure by which plaintiff could obtain records through a written request without inspecting them on site. That's at pages 55 to 56 of the record. And also, docket number 43, a lengthy order setting a settlement conference and essentially proposing the district court's solution to the problem. Plaintiffs did not use that procedure. Well, if — if — I mean, this is — we're sort of in a hypothetical universe where we accept prevailing party status, and now we're deciding whether certain reductions in the fees were okay. I mean, it seems to me a plaintiff is entitled — their goal is to create — get a binding judgment that doesn't impose burdens on them above and beyond what the Federal Protection and Advocacy Acts put on them in the course of their requesting records. So the fact that the district court came up with a sort of proposed solution that required more of the plaintiffs than, in their view, the Protection and Advocacy Acts required, it doesn't seem to me to be a reason to ding them for going forward if they were otherwise a prevailing party. Well, my point on that is that if plaintiff had used that procedure, and there's no record that that procedure would have imposed an undue burden on plaintiff, I mean, when you talk about burden, you know, there is certainly a minimum of burden in writing a letter, but there's no record that it would have stopped plaintiff's operations or caused harm to plaintiff's work in any way. If plaintiff had just listened to the district judge and said, okay, you've given us direction, we're going to follow it, the case would have been over because there is no record that it would have stopped plaintiff's operations or caused harm to  And I think that that's the ground for dispute. Docks did not contest the district court's method, but, you know, again, the plaintiff didn't like it and took an appeal to this Court, which they lost. I mean, at the end of the day, this is about resources, right? This is about whose resources get expended and how in gathering and providing these records. And Docks was trying to come up with procedures that made the records available, but the disability rights folks would have to use their resources to come find them, mark them, make the request, and then the work is significantly reduced for Docks. Disability rights folks are saying, no, under the law, we make a request, you've got the obligation to go through and hold them and find them. I mean, at the end of the day, accepting the district court's proposal strikes me as would have been a retreat from the position that I think they reasonably advocated whether or not they prevailed. Well, Your Honor has outlined a legal dispute as to what should be and can be required of DRMY under the P&A, under the P&A acts. And that legal dispute was not resolved by Supreme Court. In part, it was not resolved because we voluntarily produced the records of individual A, and then when there were two little redactions that we had missed, we produced the records unredacted and that mooted the case. Under Lackey, that's not a victory.  I'm responding to your argument about who's responsible for the delay and whether we know that there is, under Second Circuit law, we've said really should use current rates, and then we've said, well, unless the plaintiff's responsible for the delay. And as I understand your argument, you're invoking that and saying they're responsible for the delay. And I'm just questioning whether pursuing the litigation to the conclusion that there was an interlocutory appeal. I mean, I'm sure they cared about the records in these particular cases, but their bigger concern was the ongoing tension between your two agencies about how these requests were going to be processed. So not shrugging and accepting the district court's sort of compromise proposal doesn't strike me as the kind of action that counts as a delay that dings your fee request. That's all. All right. Well, you know, we can put that argument to the side because there's other delay. There was an interlocutory appeal by plaintiffs in part of the judgment that it won of not the judgment, but the preliminary injunction order that it won. They were appealing the preliminary injunction as to both Individual A and Individual B, and this Court had to point out in its summary order that, well, you can't really And as to the Individual B appeal, that was mooted because we complied with the order. You know, docs didn't delay when we didn't. When we got a preliminary injunction against us, we produced right away. So I'm not hearing a lot of questions, so we'll give you a minute to wrap up here and then we can hear from your colleague. Well, I think I've gotten to the three areas where district court reasonably exercised its discretion to reduce plaintiffs' requested fee. And, I mean, although the reduction was large, the fee that plaintiff requested was large, and under the circumstances, they weren't entitled to it. Appreciate it. Thank you. Attorney Aspey. Thank you. DRNY received the exact relief that we were seeking in the complaint, which was the records. That was why we were forced into court to file these cases, because docs prevented us not only physical access, but also access to copies of the records that we requested. We were forced into court for a second time to get access to the very records that we were entitled to in copy format. That is permanent. The relief that we received was permanent relief. We did file a mandatory preliminary injunction. We received court determinations on the law and facts that we were entitled to the records. Most importantly, substantively different from Wacky, is that you received them in preliminary injunction litigation, because that's where you received these fees. Yes, Your Honor. In the preliminary injunction proceeding. Given Wacky and Buchanan, anything they did after that that gave you what you might seems to fall within the catalyst preclusion. Yes, you could file a lawsuit, and your filing might cause someone to give you what you want. That's not a judicial determination that gives you lasting relief. The preliminary injunction, it seems to me, at best gives you temporary relief under Wacky. But then they went ahead and gave you purportedly what you wanted. But that doesn't seem to be that you were a prevailing party in the lawsuit. Nothing about this case provided us temporary relief. We received the records from Dockson. It's whether the court gave you the permanent relief. Right. Tell me what order you're looking at that gives you permanent relief. We are looking at the mandatory preliminary injunction. When you say a mandatory preliminary injunction, what do you mean by mandatory? Well, there's a heightened standard that the court reviews when what you're looking at is a change. Yes, I understand that. And that's what I'm talking about. But the court, nevertheless, gave you relief that was preliminary because there could still be litigation about that matter. Had the court intended to give us, like, truly preliminary or temporary relief, they would have put a protective order or they would have required us to return the records. Are you taking the position that the court's finding that there was clear likelihood of success on the merits precluded further litigation on that question? As to the access of the records themselves, which is what we were seeking from the case, the answer is yes, but we also, in that case, were seeking declaratory judgment. Judge Robinson pointed out that as a practical matter, you got the records. I understand that. But there's still a question about what prompted it. Okay. Appreciate it. Thank you, Your Honor. Thank you all. Thanks, everybody, for hanging in there today. We have one case on submission, 24-1423, United States v. Mary Clinton et al. We will take that on submission. We'll take this case under advisement as well. And with that, I would ask the Courtroom Deputy to adjourn the proceedings. Thank you, Court. It is adjourned.